[Civ. No. 4008. Fifth Dist. July 21, 1980.]

COUNTY OF KERN, Plaintiff and Appellant, v.
PACIFIC GAS AND ELECTRIC COMPANY, Defendant and
Respondent.

**COUNSEL**

Ralph B. Jordan, County Counsel, and Ralph N. Nickerson, Deputy County Counsel, for Plaintiff and Appellant.

Mack, Bianco, Means, Mack & Stuart, Bianco, Means, Stuart, McBurnie & McAtee, Richard A. Clarke, Bernard J. Della Santa and D. Bianco for Defendant and Respondent.

**OPINION**

**ZENOVICH, J.**—This appeal questions the validity of county ordinances which purportedly granted indeterminate gas/electric franchises to respondent. Originally, appellant questioned the propriety of respondent's method of calculating the "gross annual receipt" base from which franchise fees are taken. Subsequent to the filing of this appeal, however, the parties agreed to removing consideration of all issues relating to this claim. Thus, we only consider the contention about the validity of the perpetual franchise grants.

San Joaquin Light and Power Corporation (hereinafter SJL&P) and Coast Counties Gas and Electric Company (hereinafter Coast Counties) were awarded certain gas franchises through county ordinances, which were adopted by the County of Kern (hereinafter County) between the years 1909 and 1940. SJL&P was merged into Pacific Gas and Electric Company (hereinafter PG&E) on December 31, 1938, and the latter company took over operation of several SJL&P franchises. On August 31, 1954, Coast Counties merged into PG&E, who operated one of Coast Counties' franchises until 1957.

Pursuant to the Broughton Act[1] and Government Code section 26001,[2] the board of supervisors of County adopted and passed ordinances Nos. F-44 and F-45 on October 23, 1956. These ordinances granted respective gas and electric franchises to PG&E. Section 4 of both ordinances provided that: "The term of said franchise shall commence with the effective date hereof, and continue and remain in full force and effect until such time as grantee shall surrender or abandon same or said franchise shall be forfeited for noncompliance by the possessor thereof with its terms, or the State of California, said county or other public corporation thereunto duly authorized, shall purchase by voluntary agreement or shall condemn and take under the power of eminent domain in accordance with then existing law all property actually used and useful in the exercise of said franchise situate within the unincorporated area of said county."

After extensive argument and trial testimony, the trial court found that: "The granting of said franchises *for an indeterminate period*, is of value to the public generally in that such franchises permit Pacific to qualify its bonds for investment purposes in states within the United States which have bond maturity requirements, thus allowing Pacific to

---

[1]The Broughton Act specifies the conditions under which gas and electricity franchises can be granted by governing bodies of any county in California. (See Pub. Util. Code, § 6001 et seq.)

[2]For purposes of this appeal, the pertinent statute refers to the legislation as it read in 1956. At that time, Government Code section 26001 provided as follows: "The board [of supervisors of a county] may grant franchises along and over the public roads and highways for all lawful purposes, upon such terms, conditions, and restrictions as in its judgment are necessary and proper, and in such manner as to present the least possible obstruction and inconvenience to the traveling public.

"Any general law applicable to the granting of franchises by municipal corporations and counties throughout the State shall be complied with in the granting of any franchise by the board of supervisors." (Stats. 1947, ch. 424, § 1, p. 1134.)

get lower interest rates on its bonds, thus in turn reducing the rate base to its consumers in the State of California." (Italics added.) The court then concluded that "The Franchises F-44 and F-45 are valid, subsisting, indeterminate, nonexclusive franchises granted by the Board of Supervisors of the County of Kern, and within the power and authority of said Board to grant such franchises, to Pacific and are valid and subsisting contracts vesting in Pacific property rights protected by the United States Constitution."

The trial court construed the pertinent franchises here as being "indeterminate" in duration. ■ Accordingly, County contends that ordinances Nos. F-44 and F-45 are void because the board of supervisors did not have the power to grant franchises of unlimited term. It is County's contention that there is no clear legislative delegation which condones the 1956 action by the board; hence, the grants in perpetuity amounted to an unlawful surrender of legislative power. We are not persuaded.

■ When the Legislature has clearly expressed its intention of allowing one public body or official to exercise a specified discretionary power, the power is in the nature of a public trust and may not be exercised by others in the absence of statutory authorization. (*Bagley* v. *City of Manhattan Beach* (1976) 18 Cal.3d 22, 24-25 [132 Cal.Rptr. 668, 553 P.2d 1140].) ■ This principle is tempered by the well-established rule that legislative power may properly be delegated so long as it is channeled by a sufficient standard. (See *Kugler* v. *Yocum* (1968) 69 Cal.2d 371, 375-376 [71 Cal.Rptr. 687, 445 P.2d 303].) Even where the legislative measure contains no express standards of a limiting nature, it is common for the courts to imply them. (See 5 Witkin, Summary of Cal. Law (8th ed. 1974) Constitutional Law, § 93, p. 3329.)

■ Since a clearly expressed delegation by the Legislature is lawful, we are of the opinion that the 1956 County board of supervisors had power to grant perpetual franchises under Government Code section 26001. This provision, as it read in 1956, specified that the board of supervisors "may grant franchises along and over the public roads and highways for all lawful purposes, *upon such terms, conditions, and restrictions as in its judgment are necessary and proper,...*" (Italics added.) This legislation evidenced a delegation of power to the board of supervisors and did not limit its authority in setting terms which govern

the franchises' durations. Since no other existing law limited the nature of the board's power, it was not a legislative surrender to confer such authority upon a subordinate political body. Instead, Government Code section 26001 was a clear delegation of discretion to the County board.

This interpretation is supported by the following comment on duration of governmental franchises: "At common law a franchise was granted as other real property, in estates for years, for life, or in perpetuity. In reliance on this rule and on the statutory principle of construction of conveyances of real property, early authority supported the view that, if the time to which a franchise was to run was not expressly limited by the grant itself, the grantee obtained an estate in fee. [See *People* v. *Lawley* (1911) 17 Cal.App. 331, 346-347 (119 P. 1089).] More recent authority, however, is reluctant to characterize franchises silent as to duration as grants in fee, but favors the position that a franchise of this nature terminates on the failure of its recipient to furnish the services and meet the obligation in consideration of which the right was granted. [See *County of L.A.* v. *Southern Cal. Tel. Co.* (1948) 32 Cal.2d 378, 387-388 (196 P.2d 773), app. dism. 1949, 336 U.S. 929.]" (34 Cal.Jur.3d, Franchises From Government, § 35, pp. 520-521, fns. omitted.) Although *County of L.A.* involved a telephone line franchise issued pursuant to former Civil Code section 536,[3] its reasoning is readily applicable here. The present ordinances critically specify that the grants "continue and remain in full force and effect until such time as grantee shall surrender or abandon same...." In addition, the preamble to and section 3 of the ordinance make it clear that PG&E is the grantee of the franchises for the period of time for which the company "elect[s] to use [the franchises] for the purpose of conveying/transmitting and distributing gas/electricity to the public for any and all purposes." Thus, in line with more recent authority, we are of the opinion PG&E has a perpetual franchise so long as it satisfies the implied-in-law condition of furnishing gas/electricity to the public in a satisfactory manner.[4]

---

[3]This former provision is currently embodied in Public Utilities Code section 7901.

[4]County criticizes the *Lawley* decision, which is the early authority for the position that an unlimited franchise was equal to an estate in fee. County argues that it ignores the policy of strictly construing public grants enunciated in Civil Code section 1069. The preferable approach is to abide by the *County of L.A.* rationale, which allows a perpetual grant *if the grantee does not abandon the obligation of providing services to the public.* This accords with recent commentary, which states the justification for sustaining perpetual franchises: "The general rule is that such grants are strictly construed; but nevertheless, in view of the fact that the services performed are in fur-

Nevertheless, County advances four reasons for invalidating the pertinent ordinances.

■ Appellant initially contends the Legislature never delegated power to the County board of supervisors because it did not expressly do so in a parallel section allowing municipalities (i.e., cities) to grant "indeterminate" franchises. Under the Franchise Act of 1937,[5] the legislative body of any "municipality" was empowered to grant gas/electric franchises for "indeterminate" terms. (See Pub. Util. Code, §§ 6202, 6264.)[6] Subsequently, in 1971, the Legislature enacted Public Utilities Code section 6201.5, which expressly stated: "As used in this chapter, municipality includes counties,..." (See Stats. 1971, ch. 422, § 1, p. 811.) From this progression of enactments, appellant contends that the Legislature never intended to delegate authority to counties in the area of perpetual franchises, since it could have done so expressly in the 1937 act. We are not persuaded. Notwithstanding its failure to include "counties" under the rubric of the 1937 act, the Legislature did grant power to county boards of supervisors under Government Code section 26001. Silence in the 1937 act, (which dealt with general cities) does not imply that section 26001 (which specifically involved counties) is an inoperative delegation to the 1956 board of supervisors. Since Government Code section 26001 evinced a legislative intent to confer power upon a subordinate county body in 1956, the later amendment of a different statutory scheme is inconsequential in determining authority to grant indeterminate franchises under then existing legislation.

---

therance of public policy and often require the assumption of heavy expenditures and risks, in the absence of express words of limitation or a law expressly fixing the period of duration, the rights granted will not be extinguished except on substantial reasons or for material causes." (34 Cal.Jur.3d, Franchises From Government, § 35, p. 520.)

Thus, it is unnecessary to address County's criticism of *Lawley*, since the modern approach furthers a substantial public policy which compensates for any damage to the rule of strictly construing grants.

[5]The Franchise Act of 1937 was incorporated into the Public Utilities Code as section 6201 et seq. (See Stats. 1951, ch. 764, §§ 6201-6302, pp. 2166-2171.)

[6]Public Utilities Code section 6264 formerly provided: "Every franchise granted pursuant to this chapter, except when a definite term therefor is specified in the ordinance granting it, is indeterminate, that is to say, every such franchise shall endure in full force and effect until, with the consent of the Public Utilities Commission, it is voluntarily surrendered or abandoned by its possessor, or until the State or some municipal or public corporation purchases by voluntary agreement or condemns and takes under the power of eminent domain, all property actually used and useful in the exercise of the franchise and situate within the territorial limits of the State, municipal, or public

County then contends that the Franchise Act of 1937 provided the sole considerations under which an "indeterminate" franchise could be granted or that, alternatively, the act impliedly repealed Government Code section 26001. Principal reliance is placed upon the following section of the 1937 act which provides: "This chapter provides a procedure, alternative to the procedure provided in Article 1 of Chapter 1 of this division [the Broughton Act], for the granting of franchises *by municipalities*. When any proceeding is initiated under this chapter for the granting of a franchise, the provisions of this chapter *exclusively* govern the granting *of such franchise*." (Pub. Util. Code, § 6204, italics added.) We are of the opinion that this statute does not aid County, since it only applies to municipalities. There is no indication that this provision preempted the existing authority delegated through Government Code section 26001. ■ Moreover, it is firmly established that the repeal of statutes by implication is not favored; the Legislature is not presumed to intend repeal of a former act by the passage of a subsequent enactment if a fair and reasonable construction can be given to both. (See *Boyd* v. *Huntington* (1932) 215 Cal. 473, 482 [11 P.2d 383]; *Hammond* v. *McDonald* (1939) 32 Cal.App.2d 187, 192 [89 P.2d 407]; cf. *County of L.A.* v. *Southern Cal. Tel. Co., supra*, 32 Cal.2d at p. 383; *County of Inyo* v. *Hess* (1921) 53 Cal.App. 415, 421-422 [200 P. 373] (Broughton Act did not repeal former Civ. Code, § 536).) ■ Since both provisions could coexist without conflict in 1956, we find County's second argument is without merit.

County next contends that certain provisions of the Broughton Act undercut the establishment of perpetual grants by subordinate political bodies. County specifically refers to Public Utilities Code section 6006, which states that the advertisement papers for the franchise shall indicate "the term for which it is granted...." It is argued that the Legislature understood "term" to designate a definite rather than indeterminate time period because, in another section, the Legislature stated: "...nothing contained in such a franchise shall be construed to contract away, modify or abridge *either for a term or in perpetuity* the municipality's right of eminent domain in respect to any public utility." (Pub. Util. Code, § 6262, italics added.) County's parsed reading of Public Utilities Code section 6006 does not support the argument that indeterminate franchises were *not* contemplated by the Legislature in 1956. Read in a common sense fashion, section 6006 merely requires

corporation purchasing or condemning such property, or until the franchise is forfeited for noncompliance with its terms by the possessor thereof." (See Stats. 1951, ch. 764, § 6264, p. 2169.)

that the franchise term be described—whether it be definite or perpetual in nature. The record shows that the indeterminate length of the franchises was set forth in section 4 of the proposed ordinance which was circulated in the advertisement. As the subtitle to Public Utilities Code section 6264 demonstrates, either an *indeterminate* or a *definite* term is considered a "term of franchise." The reference to "either for a term or in perpetuity" under section 6262 merely clarifies that eminent domain extends to both definite and perpetual franchises.[7]

■ Finally, County contends that the perpetual grants are void because California appellate decisions have implicitly sustained public contracts of only limited duration.[8] County then suggests that a long-standing course of administrative interpretation had established 50 years as the outside time parameter for franchises,[9] and that this construction should be placed upon the present ordinances. None of the cases cited by County deal with franchise grants under Government Code section 26001. As noted earlier, perpetual franchises can be tolerated so long as the grantee furnishes adequate services and abides by the obligations set forth in the grant. (See 34 Cal.Jur.3d, Franchises From Government, § 35, p. 521.) Since these implied-in-law conditions prevent perpetual franchises from becoming unduly oppressive, it is unnecessary to adopt a 50-year period as the franchise time limit.

We therefore find that ordinances Nos. F-44 and F-45 are not invalid; we further find that the ordinances granted franchises within the purview of the legislative delegation given to the board of supervisors under Government Code section 26001 and that the indeterminate length of

---

[7]County's suggestion that Public Utilities Code section 6006 contemplated only *definite* terms (because of the bifurcation of "term" and "in perpetuity" in § 6262) would lead to absurd results. Under its construction, the Legislature merely intended limited franchises by its use of "term" in section 6006. This interpretation would mean that the express language of section 6264—which allowed municipalities to grant indeterminate franchises—would be rendered nugatory by the advertising requirements of section 6006. Since it is unreasonable to believe that the Legislature so intended, the reference to "term" in section 6006 must be construed as designating both definite and perpetual time periods.

[8]County's request for judicial notice, which we have taken, is relevant to this argument, since it involves recognizing the duration of certain public contracts sustained in the decisional law.

[9]County bases this argument upon a 1953 paper written by Paul E. Sloane, which was admitted into evidence at trial.

the franchises did not render the ordinances void.[10] Thus, we are of the opinion that the trial court properly found that the grants of the indeterminate franchises were within the board's governing authority.

The judgment is affirmed.

Brown (G. A.), P. J., and Franson, J., concurred.

A petition for a rehearing was denied August 18, 1980, and appellant's petition for a hearing by the Supreme Court was denied October 3, 1980. Tobriner, J., did not participate therein. Bird, C. J., was of the opinion that the petition should be granted.

---

[10]In its reply brief, County concedes that the ordinances are contracts secured by the United States Constitution against subsequent legislative impairment once they are determined to be valid.